IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MARLON MAURICE ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-048 |
| | ) | |
| HENRY O. YOUNG and | ) | |
| JOHN WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

*Pro se* Plaintiff Marlon Ellis, an inmate at Augusta State Medical Prison ("ASMP"), brings this case pursuant to 42 U.S.C. § 1983, alleging excessive force by both prison guard Defendants. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motions for summary judgment be **DENIED**. (Doc. nos. 44, 46.)

**I. FACTS**

On December 16, 2013, Defendants Henry Young and John Williams were employees of the Georgia Department of Corrections and serving at ASMP on the Correctional Emergency Response Team ("CERT"). All parties agree that, on December 16, 2013, Defendants and two other CERT Officers were on patrol in the prison yard of Dormitory 11A when Officer Young instructed Plaintiff to turn around, place his hands on the fence, and spread his legs for a contraband pat-down search. (Pl.'s Dep., doc. no. 44-3, p. 18; Williams Decl., doc. no. 44-4, ¶¶ 3-5; Young Decl., doc no. 46-3, ¶¶ 9-10.) Plaintiff did

so, and Officer Young ordered Plaintiff to spread his legs wider and used his foot to tap or kick Plaintiff's legs outward. (Pl.'s Dep. 18; Young Decl. ¶¶ 12-13.) While complaining about Officer Young's foot tapping or kicking, Plaintiff turned around and punched Officer Young, either unprovoked or in response to Officer Young first punching Plaintiff. (Pl.'s Dep. 18; Young Decl. ¶ 14.) The CERT officers tackled Plaintiff to the ground, handcuffed him, and at some point sprayed Plaintiff with pepper spray. (Pl.'s Dep. 18; Young Decl. ¶ 15; Williams Decl. ¶¶ 8, 10.) Either three or four of the officers then escorted Plaintiff from the prison yard to the medical unit. While this general outline is undisputed, the details are important and highly contested.

### A. Plaintiff's Version of Events

Plaintiff testified at his deposition that he cooperated fully with the pat-down search and was spreading his legs as instructed, but Officer Young nevertheless kicked the back of his legs repeatedly while telling him to spread them further apart. (Pl.'s Dep. 18, 19.) Plaintiff admits he disobeyed instructions by turning around while telling Officer Young to stop kicking, but he denies throwing the first punch. (Id. at 19.) Instead, Plaintiff alleges Officer Young punched him in the face as soon as he turned around, and Plaintiff reacted in self-defense by punching Officer Young in the face. (Id. at 18.) When Officers Young and Williams reacted to Plaintiff's punch by tackling him to the ground and handcuffing him, it took only approximately ten seconds because Plaintiff offered no resistance. (Id. at 18, 20-21.) After the handcuffing, Officer Young sat on Plaintiff's back and punched him in the face approximately five times while saying "What the f*** is wrong with you?" and "Have you lost your mind?" (Id. at 18, 19-20.) While Officer Young was punching him, Officer Williams sprayed Plaintiff once with pepper spray. (Id. at 19-20.)

2

Plaintiff testified that when Defendants took him to the medical unit from the prison yard, they abused him during the elevator ride to the medical unit. (Id. at 22-23.) According to Plaintiff, all four CERT officers entered an elevator with him on the first floor and instructed Plaintiff to stand with his back to them. (Id. at 23.) Officer Williams used a key to stop the elevator between floors for approximately sixty to ninety seconds, and Officers Young and Williams punched Plaintiff in the back of his head until he fell to the elevator floor. (Id. at 23.) Plaintiff begged for them to stop beating him. (Id. at 24-25.) Officer Young responded by saying, "I'll kill you," and uttered something in a foreign language. (Id.) After Plaintiff fell to the elevator floor, Officer Williams kicked him across the bridge of his nose. (Id. at 26.) The officers then picked Plaintiff up from the elevator floor, and Officer Williams used the key to restart the elevator and proceed to the medical unit. (Id. at 26-27.)

Plaintiff alleges that, as a result of the beatings, his right eye was nearly swollen shut, both sides of his jaw were swollen, and he suffered from severe headaches and nausea for approximately four to six weeks. (Id. at 29-30.) An unidentified nurse allegedly told Plaintiff that internal cranial pressure caused the headaches, and he received prescriptions for Indocin, Tylenol 3, and Excedrin. (Id.)

Soon after filing the complaint, Plaintiff filed the sworn declarations of three ASMP inmates, Saul Harris, Jerome Dunson, and LaShawn Shanks, in support of his prison yard allegations. Mr. Harris claims he witnessed Defendants beating and kicking Plaintiff after Plaintiff was in "handcuffs on the ground." (Harris Decl., doc. no. 8, p. 8.) Mr. Dunson declared, in pertinent part, that he witnessed Defendants "beat inmate Ellis while he was in fact handcuffed and face down on the ground" in the prison yard. (Dunson Decl., doc. no.

3

15, p. 1.) Mr. Shanks declared that he observed Defendants "jump on" Plaintiff and "the force that was used was unprovoked." (Shanks Decl., doc. no. 16, p. 1.) Mr. Shanks further described the prison yard incident as follows:

> Officer Young on CERT team command[ed] Ellis to get on the fence. Ellis replied yes sir Officer Young. Then Officer Young kicked his feet as he commanded him to spread his legs then slapped him in the face. So Ellis spinned [sic] around then the team jumped on Ellis beating stumping [sic] and twisting his neck while making threats to kill him.

(Id. at 2.)

More recently, in response to Defendants' summary judgment motions, Plaintiff submitted sworn declarations from two additional inmates, Raymond Patillo and Daniel Copeland. (Doc. no. 54.) Mr. Patillo declared that Officer Young "started kicking [Plaintiff's] legs apart in a savage, brutal manner with a look of rage on his face. Also while Officer Young was kicking [Plaintiff's] legs apart he struck Mr. Ellis on the side of his left jaw . . . ." (Patillo Decl., doc. no. 54, p. 5.) Mr. Patillo further declared that the other officers "tackles [sic] him, [Plaintiff] and put the handcuffs on him and continued to assault him." (Id.) Mr. Copeland declared that Officer Young "push[ed] [Plaintiff's] head into pole and slap him on left side and . . . [Plaintiff] defenced [sic] self." (Copeland Decl., doc. no. 54, p. 7.) Mr. Copeland added that after Plaintiff was handcuffed, "[Officer] Williams spray[ed] him with mace." (Id.)

### B. Defendants' Version of Events

Defendants declared that while they were on patrol in the prison yard with Officers Rodgerick Nabors and Justin Washington, Officer Young instructed Plaintiff to turn around, place his hands against the fence, and spread his legs for a contraband pat-down search.

4

(Young Decl. ¶¶ 10-12; Williams Decl. ¶¶ 5-6.) When instructed by Officer Young to spread his legs further apart, Plaintiff refused. (Young Decl. ¶¶ 11-12; Williams Decl. ¶¶ 5-6.) Officer Young "began to tap" Plaintiff's feet with his foot to encourage Plaintiff to spread his legs further apart, and also to keep Plaintiff "a bit off balance which helps us officers maintain control of the situation." (Young Decl. ¶ 13.)

Plaintiff complained about the foot-tapping, spun around, and struck Officer Young in the face. (Young Decl. ¶ 14; Williams Decl. ¶¶ 6-7.) Officer Young did not punch Plaintiff in return, but instead stepped back, sprayed Plaintiff with pepper spray, and took Plaintiff to the ground with the assistance of Officers Nabors and Washington. (Young Decl. ¶ 18; Williams Decl. ¶ 8.) Consistent with their training, the three officers held Plaintiff on the ground until they had full control and Plaintiff was no longer resisting. (Young Decl. ¶ 16.) Because Plaintiff is a large man and continued to resist, it took five to seven minutes to get him under control and in handcuffs, which required pulling Plaintiff's arms behind his back and pressing down on his back to maintain control. (Id. ¶ 21.)

Defendants believed they needed to regain control over Plaintiff quickly and firmly because the presence of multiple inmates in the vicinity posed the threat of a larger disturbance, in which the officers would have been greatly outnumbered and in significant danger. (Id. ¶ 22; Williams Decl. ¶ 9.) Although Defendants never directly refute Plaintiff's allegations that Officer Young hit Plaintiff five times after handcuffing him and Officer Williams sprayed Plaintiff with pepper spray after the handcuffing, it is clear from their detailed accounts of the encounter that Defendants deny these allegations. (See generally Young Decl.; Williams Decl.)

5

Immediately after the handcuffing, Officers Young, Nabors, and Washington helped Plaintiff to his feet and escorted him to the medical unit for a medical evaluation, in accordance with standard procedure requiring such evaluation after officers use any degree of force against an inmate. (Williams Decl. ¶ 11; Young Decl. ¶ 24.) Officer Williams did not participate in escorting Plaintiff to the medical unit. (Williams Decl. ¶ 12.) According to Officer Young, no one used force against Plaintiff while he was escorted to the medical unit, and no one stopped the elevator between floors on the way to the medical unit. (Young Decl. ¶¶ 27-30.) Furthermore, neither Defendant has ever been on an ASMP elevator that stopped between floors, and neither believes that it is possible to stop an ASMP elevator between floors. (Williams Decl. ¶ 14; Young Decl. ¶¶ 30-31.) Officer Young has never possessed an elevator key or any other equipment that would stop an elevator, and he has never seen anyone at ASMP use any type of device to stop an ASMP elevator. (Young Decl. ¶¶ 32-34.)

Although Officers Nabors and Washington were in the prison yard and on the elevator, Defendants have not provided any testimony from either officer. Instead, to support their version of events, Defendants submitted sworn declarations from ASMP Physician Assistant William Cheatam and ASMP Facility Engineer Doug Wasden. Mr. Wasden declared that he is "familiar with most operational aspects of the elevators at ASMP" and that, to his knowledge, "no elevator at [ASMP] can be purposefully stopped between floors except possibly by first responders or elevator technicians." (Wasden Decl., doc. no. 44-5, ¶ 5.) Furthermore, "[t]he elevators at ASMP cannot be purposely stopped between floors by any staff member" at ASMP. (Id. ¶ 6.) While there is an elevator key that allows maintenance staff to access the third floor, which houses the HVAC unit, CERT officers are

6

not assigned this key. (Id.) CERT officers can check out this key, but it only allows access to the third floor, "and cannot make the elevator stop between floors." (Id. ¶ 6.)

Physician Assistant William Cheatam performed the use of force assessment on Plaintiff upon his escort to the medical unit, including a full medical assessment and documentation of all injuries. (Cheatam Decl., doc. no. 44-6, ¶ 7.) Mr. Cheatam determined that Plaintiff "had a small bruise next to his right eye and minimal swelling to both sides of his face. There was no active bleeding, no broken blood vessels and no broken bones." (Id. ¶ 8.) Plaintiff was alert and oriented during the assessment, had normal speech and gait, and "was ambulatory when he walked into medical being escorted by officers." (Id. ¶ 9.) Plaintiff did not complain of any injury to the back of his head or his nose, nor was there any injury in either location. (Id. ¶¶ 10, 11.) Mr. Cheatam cleaned Plaintiff's face, applied ice to the swollen areas, and gave Plaintiff Motrin for pain. (Id. ¶ 12.) On December 30, 2013, two weeks after the incident, a physician at ASMP evaluated Plaintiff for complaints of headaches and prescribed Indocin, a non-steroid, anti-inflammatory drug similar to Motrin, and Tylenol with codeine. (Id. ¶ 13.)

The Use of Force Assessment form completed by Mr. Cheatam on December 16, 2013, provides slightly more detailed information concerning Plaintiff's injuries. (Doc. no. 54, pp. 9-11.) The first page states in part as follows: "Face is swollen, ecchymosis right side of his eyes. Tenderness on both sides of his face. Abrasions on his lips." (Id. at 9.) The second page states in part as follows: "Pain and swelling to both jaws and around both eyes. Small area of ecchymosis lateral to right eye. No active bleeding." (Id. at 10.)

## II. DISCUSSION

As discussed below, summary judgment is inappropriate because the evidence when viewed most favorably to Plaintiff shows Defendants (1) repeatedly kicked the back of Plaintiff's legs despite his cooperation during a pat-down search; (2) punched Plaintiff when he turned around to complain; (3) punched Plaintiff and sprayed him with pepper spray despite Plaintiff being in handcuffs and cooperative; (4) attacked Plaintiff in the elevator; and (5) caused Plaintiff to suffer swelling to both sides of his jaws and both eyes, bruising above his left eye, abrasions to his lips, and four to six weeks of severe headaches and nausea.

Defendants assert Plaintiff has admitted facts that are decisive of these five key issues, by failing to comply with Local Rule 56.1 in responding to Defendants' statement of undisputed material facts. While Plaintiff's responses do fail to pinpoint the evidence that creates general questions as to several facts proffered by Defendants, the Court is required to conduct an independent review of the record to determine if questions of material fact exist. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004); see also Mann v. Taser Int'l Inc., 558 F.3d 1291, 1303 (11th Cir. 2009) (holding courts must "determine if there is, indeed, no genuine issue of material fact."). The Court has done so and finds that such questions exist.

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When seeking summary judgment, the movant must show that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "The mere existence of some factual dispute will not defeat summary

judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Overview of the Excessive Force Legal Landscape

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169

9

F.3d 1353, 1374 (11th Cir. 1999). To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id. *De minimi*s uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Hudson, 503 U.S. at 9. Because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is, "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: 'The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.'" Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7). Moreover, the use of restraints is permitted to control inmates who are causing a disturbance, attempting to incite other

10

prisoners, or represent a danger to themselves or others. Williams v. Burton, 943 F.2d 1572, 1575-76 (11th Cir. 1991).

Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6.

### C. Defendants Are Not Entitled to Summary Judgment Because a Juror Could Reasonably Find Plaintiff Suffered Serious Injuries Because of Significant, Excessive, and Malicious Force by Defendants in the Prison Yard and Elevator.

As to the objective component of the analysis, Defendants argue that the undisputed facts show only *de minimis* force and injury. Viewing all evidence in the light most favorable to Plaintiff, a juror could reasonably conclude that the force used in both the prison yard and elevator was significant, excessive, malicious, and resulted in serious injuries including swelling to both sides of his jaws and both eyes, bruising above his right eye, abrasions to his lips, and four to six weeks of severe headaches and nausea.

This holding is consistent with the general rule that the *de minimis* determination is normally reserved for the trier of fact. Knighten v. Stanton, No. CA 12-0717-WS-C, 2014 WL 1331026, at *9 (S.D. Ala. Mar. 31, 2014). Furthermore, injuries less serious than those claimed by Plaintiff have been found to be more than *de minimis* in this Circuit. See, e.g. Skelly v. Okaloosa Cnty. Bd. Of Cnty. Comm'rs, 456 F.App'x 845, 848 (11th Cir. 2012)

(holding abrasion to eye and burns from tasers were not *de minimis*, yet were also not serious); Harris, 97 F.3d at 505-06 (holding exacerbation of pre-existing lower back injury was not *de minimis*); Benton v. Rousseau, 940 F.Supp.2d 1370, 1378 (M.D. Fla. 2013) ("Benton's injuries include headaches and facial scars . . . although perhaps not serious, amount to more than *de minimis* injuries."); Brinson v. Jackson, No. CV412-105, 2013 WL 1180832, at *1 (S.D. Ga. Mar. 20, 2013) ("A dislocated finger is more than *de minimis*, though not significant.").

For the purpose of analyzing the subjective component, the events on December 16, 2013, are divided easily into three distinct segments, *i.e.*, the initial pat-down that culminated in Plaintiff punching Officer Young, the tackling and handcuffing of Plaintiff, and the escorting of Plaintiff to the medical unit. The Court has carefully scrutinized the evidence regarding each segment and finds Plaintiff has presented sufficient evidence to overcome Defendants' summary judgment motions.

With respect to the first segment, the evidence when viewed most favorably to Plaintiff shows that Officer Young kicked Plaintiff in the back of his legs repeatedly during the pat-down search while commanding Plaintiff to spread his legs further, even though Plaintiff was already complying. When Plaintiff turned around to complain, Officer Young punched Plaintiff in the face without any further provocation. Considering the factors in the subjective component, the trier of fact could reasonably find these actions by Officer Young were malicious and clearly excessive to any threat reasonably perceived.

Defendants point out that Plaintiff indisputably turned around despite Officer Young's instructions to face the fence and maintain the position for a pat-down search. A guard may use force to restore discipline when a prisoner creates a disturbance by failing to

follow a prison guard's instructions. Tate v. Rockford, 497 F. App'x 921, 925 (11th Cir. 2012). But this general rule must give way to the facts alleged by Plaintiff, based upon which a reasonable juror could conclude Officer Young (1) provoked Plaintiff to turn around by needlessly and repeatedly kicking him in the back of the legs; and (2) reacted excessively and maliciously by punching Plaintiff when he turned around to complain about the kicking.

As to the second segment, tackling Plaintiff to the ground and handcuffing him appears to have been a reasonable response to Plaintiff punching Officer Young in the face, even if Officer Young instigated the fisticuffs by punching Plaintiff first. Plaintiff appears to concede as much by focusing his claim on the subsequent, alleged punching, kicking, and pepper spraying. Plaintiff testified at his deposition, and submitted corroborating declarations from five eyewitnesses, that Defendants punched him in the face five times and sprayed him with pepper spray after Plaintiff was handcuffed, lying on his stomach, and no longer resisting. (Pl.'s Dep. 18-22.) The medical evidence of facial bruising, swelling, and abrasions could reasonably be found to support Plaintiff's version of events, and to cast doubt on Defendants' testimony that they never punched Plaintiff. (See doc. no. 54, pp. 9-11.) Because the use of force on a restrained and compliant inmate constitutes a violation of the Eighth Amendment, summary judgment as to this aspect of Plaintiff's claim is inappropriate. See, e.g., Skrtich v. Thornton, 280 F.3d 1295, 1301-02 (11th Cir. 2002) (explaining prisoner cannot be subjected to gratuitous or disproportionate force with no object but to inflict pain); Williams, 943 F.2d at 1576 (holding Eighth Amendment violation occurs when physical abuse occurs after prisoner ceases resistance).

Finally, as to the third segment, it is an obvious Eighth Amendment violation to punch a restrained and compliant inmate during an elevator ride to the medical unit.

Defendants do not contend otherwise, but instead urge the Court to disregard Plaintiff's testimony because it is "blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1254 (11th Cir. 2013). Defendants allege it was impossible for Officer Young to stop the elevator between floors because ASMP elevators do not stop in this manner, and Officer Williams could not have kicked Plaintiff across the bridge of his nose because Plaintiff suffered no injuries to his nose. (Doc. no. 46-1, pp. 13-15.) While these arguments may make trial of the elevator incident difficult for Plaintiff, the evidence does not render Plaintiff's version of events impossible or incredible as a matter of law.

Concerning the allegation that Officer Young stopped the elevator between floors, Facility Engineer Doug Wasden never declared unequivocally that he knows all functional aspects of the elevator and knows with reasonable certainty that an operator cannot make it stop between floors. (Wasden Decl. ¶¶ 5-6.) Instead, he is "familiar with most operational aspects" of the elevator and "to his knowledge," the elevator "cannot be purposely stopped between floors." (Id. ¶¶ 3-5.) He casts even further doubt on this limited opinion by recognizing the possibility of first responders and elevator technicians being able to stop the elevator between floors, without ever bothering to explain why anyone else could not accomplish the same feat. (Id. ¶ 5.)

Furthermore, Mr. Wasden explains that, had Officer Young merely checked out a key to the elevator from the maintenance staff, he could have used it to "access the third floor, which houses all of the building's HVAC equipment." (Id. ¶ 6.) Although Plaintiff testified the beating occurred while Officer Young used the key to stop the elevator between floors, it

14

is entirely within the realm of reason that the beating occurred instead with the elevator stopped on the third floor. Just as problematic for Defendants is the complete absence of testimony from Officers Nabors and Washington despite their presence in the elevator. (Williams Decl. ¶11; Pl.'s Dep. 22.) One thus cannot say that the evidence of record renders Plaintiff's version of the elevator events impossible or incredible as a matter of law.

Similarly, while the absence of visible injury to Plaintiff's nose and back of his head may pose problems for Plaintiff at trial, it is inadequate to justify a wholesale rejection of Plaintiff's testimony concerning the elevator incident. This is especially true since the medical record shows Plaintiff suffered swelling to both sides of his jaws and both eyes, bruising above his right eye, abrasions to his lips, and four to six weeks of severe headaches and nausea. (Doc. no. 54, pp. 9-11.) Consequently, Defendants are not entitled to summary judgment.

### D. Qualified Immunity Does Not Apply, and the PLRA Does Not Bar an Award of Compensatory or Punitive Damages.

Defendants argue they are entitled to qualified immunity, but this defense is not available because "the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution. Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 312; Skrtich 280 F.3d at 1301-02. Because there is "simply no room for a qualified immunity defense when the plaintiff alleges such a violation," the sole question is "whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." Skrtich 280 F.3d at 1301-02.

Defendants argue that, even if a constitutional violation is found, Plaintiff is limited to recovery of nominal damages under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e)

because his injuries are *de minimis*. (Doc. no. 46-1, pp. 18, 19.) This code section provides, in pertinent part, as follows: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e).

This code section only prohibits federal civil actions by prisoners alleging purely mental or emotional injury and no physical injury. See, e.g. Williams v. Brown, 347 F.App'x 429, 436 (11th Cir. 2009) ("Compensatory damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant") (citing Slicker v. Jackson, 215 F.3d 1255, 1229 (11th Cir. 2000); Nix v. Carter, 2013 WL 432566, at *2 (M.D. Ga. Feb. 1, 2013) ("There is no authority for limiting a prisoner's damages for the *actual* physical injury he may have suffered, even if the Court determines that the injury was *de minimis*.") Not only has Plaintiff alleged physical injury, but as explained above, a juror could reasonably find that his injuries are more than *de minimis*. Plaintiff is therefore not limited in his recovery to nominal damages under the PLRA.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS AND RECOMMENDS** that Defendants' motions for summary judgment be **DENIED**. (Doc. nos. 44, 46.)

SO REPORTED and RECOMMENDED this 4th day of February, 2016, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA